**In re JO–NELL C.**

Supreme Judicial Court of Maine.

Argued May 1, 1985.

Decided June 10, 1985.

Nancy D. Metz (orally), Fairfield, for plaintiff.

Carmen L. Coulombe (orally), Dept. of Human Services, Legal Div., Augusta, for defendant.

William Laney (orally), Skowhegan, Guardian ad litem.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

In this appeal from a child protection order, we are faced with the narrow question of the constitutionality of the procedure used by the District Court judge for the presentation of the testimony of a sixteen-year-old girl who allegedly has been sexually abused by her own father. Asserting a violation of his due process rights, the father challenges his exclusion from the courtroom during the girl's testimony. We reject that challenge and affirm the transfer of custody from the father to the Department of Human Services (DHS).

In 1980, in a court action unrelated to the case at bar, Jo-Nell C., then thirteen years of age, was removed from the custody of her mother because of a determination that the girl's stepfather had been sexually molesting her. Custody was transferred to the girl's father, and so she moved to Norridgewock to live with him. Two and a half years later, following allegations that he had been having sexual relations with the girl ever since her arrival in his home, the father voluntarily placed her with a family he knew in Waterville. When after a few months the father wanted Jo-Nell to return to live with him, the girl and her Waterville family approached DHS to seek help in preventing her return to a home where, they were convinced, she would continue to be abused.

On August 17, 1983, the District Court (Skowhegan) granted temporary relief on DHS's petition for a child protection order and appointed an attorney to act as guardian ad litem for Jo-Nell. The court held a full hearing on the merits on January 11, 1984. The parties represented at that hearing were the girl by the attorney appointed as her guardian ad litem, the father by his court-appointed attorney, and DHS by an assistant attorney general. DHS rested its case in chief after presenting two witnesses, a psychologist who had interviewed Jo-Nell and the mother of the family in Waterville with whom the girl was living. Jo-Nell's father then sought to call the girl as "his" witness, but was forestalled from doing so by the court. Guided in general by the first sentence of 22 M.R.S.A. § 4007(2),[1] the District Court judge estab-

---

1. 22 M.R.S.A. § 4007(2) (Supp.1984–1985) provides in full:

lished the following procedure for eliciting the girl's testimony: first, all persons, including the girl's father, were to be excluded from the courtroom, except only the three parties' attorneys and the girl. The judge then began the examination of the girl by making a few general inquiries, following which all three attorneys questioned her in turn. They were allowed to examine Jo-Nell as though she were on the stand in open court; every relevant question that the attorneys had, they were allowed to ask. After Jo-Nell had testified, the father rested. He did not take the stand or offer any further evidence. As a result of the hearing, the District Court gave custody of Jo-Nell to DHS. The father appealed that custody order to the Superior Court (Somerset County). That tribunal, finding no error in the manner in which the girl's testimony was presented, denied the father's appeal. We do the same.

■ Trial court judges are vested with a broad discretion in controlling the presentation of evidence, including the methods of interrogating witnesses. Rule 611(a) of the Maine Rules of Evidence recognizes that discretion by providing that:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence on direct and cross-examination so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, ... and (3) protect witnesses from harassment or undue embarrassment.

Under Rule 611(a) the narrow question here becomes whether the District Court judge exercised "reasonable control" over the mode and order of interrogating Jo-Nell. In the circumstances of the present case, that question is identical to whether the court-prescribed procedure accorded the father his constitutional rights of due

process of law. We answer both questions in the affirmative.

■ The due process to which a parent in a child custody proceeding is entitled does not rise to the same level as that accorded the defendant in a criminal prosecution. *See In re Sabrina M.*, 460 A.2d 1009, 1015–16 (Me.1983) (in proceeding brought by DHS for custody of child, "preponderance of the evidence" standard does not deprive parent of due process). *See also Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (civil burden of "clear and convincing" evidence, not "beyond a reasonable doubt," applied in parental rights termination case); *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (indigent parents not entitled as of right to counsel in parental rights · termination case). The right to raise one's own children, however, we have previously held to be of constitutional dimension, *Danforth v. State Department of Health and Welfare*, 303 A.2d 794, 796–97 (Me.1973); and therefore proceedings to terminate that right are deserving of more elaborate procedural safeguards than are required for the determination of lesser civil entitlements. Whether tested by article I, section 6–A of the Maine Constitution or by its federal counterpart, due process is not a static concept; rather, its requirements vary to assure the basic fairness of each particular action according to its circumstances. *Id.* at 797–98. We therefore examine the procedure followed by the District Court in this case not by comparing it to any fixed set of rules, but by making the practical inquiry whether that procedure struck a balance between competing concerns that was fundamentally fair to the father.

■ Plainly the District Court judge excluded the father from the courtroom during the girl's testimony because of a belief that the father's presence would hinder the

The court may interview a child witness in chambers, with only the guardian ad litem and counsel present, provided that the statements made are a matter of record. The

court may admit and consider oral or written evidence of out-of-court statements made by a child, and may rely on that evidence to the extent of its probative value.

girl in telling her story candidly and would needlessly subject her to considerable added embarrassment and trauma. Both of those concerns are explicitly recognized in M.R.Evid. 611(a)(1) and (3) to be valid grounds for the court's exercise of control over the presentation of evidence. That the judge was justified in taking steps to facilitate the girl's testimony is abundantly clear from the record. Jo-Nell had considerable difficulty in bringing herself to testify against her father, for whom she obviously felt a great deal of emotional attachment. It was only after two and a half years of abuse by her father that the girl told anyone of her sexual relations with him, and even then the full story came out, in bits and pieces, only when she was no longer living with him. She testified that if she were to return home with him, she would be unable to resist his sexual advances. In those circumstances the District Court judge could reasonably conclude that having her father present in the courtroom during her testimony would be a considerable, if not an insurmountable, impediment to her testifying. The judge cannot be faulted for adopting a procedure that was designed to minimize emotional damage and trauma to the girl, and particularly so in the extremely delicate circumstances of this case.

The manner in which the District Court judge in this case exercised his discretion was well-tailored to protect the interests of the father, as well as to make the girl's court appearance as little of an ordeal for her as possible. By allowing the father's attorney to question Jo-Nell without any restriction beyond the usual rules of evidence, the trial court made sure that any legitimate interest of the father would be vigorously represented and that the girl's story would be fully tested in the adversary process. Any added benefit or satisfaction the father might have gained from being present in the courtroom for his daughter's testimony is far outweighed by the harm it might have done, both to the girl and to the court in its truth-seeking function.

The father had no right to insist on presenting the daughter as his witness so as to lead off in examining her on direct. Rule 611(a) contemplates judicial control over just such questions of "order of interrogating witnesses," and the judge gave the father's attorney full opportunity to question the girl. Nothing prevented the father's attorney from consulting with him before finishing the girl's cross-examination, or from calling other witnesses to rebut her testimony. The father fails to show any prejudice to him whatever from the control the District Court exercised over the presentation of Jo-Nell's testimony.

We can find no basic unfairness in the procedure used in this case. That procedure fell well within the compass of the due process of law guaranteed to the father by both the Maine and the United States Constitutions.

Accordingly, the entry is:

Judgment affirmed.

All concurring.