**In re RANDY SCOTT B.**

Supreme Judicial Court of Maine.
Argued April 29, 1986.
Decided July 7, 1986.

Lowery & Platt, Peter B. Dublin, (orally), Portland, for plaintiff.

James E. Tierney, Atty. Gen., Jonathan R. Chapman, (orally), James Eastman Smith, Asst. Attys. Gen., Augusta, for defendant.

Linnell, Choate & Webber, Robert E. Mullen, (orally), Auburn, guardian ad litem.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

By order of the District Court (Lewiston), the parental rights of Robert B. to his thirteen-year-old son, Randy Scott B., were terminated pursuant to 22 M.R.S.A. § 4055(1)(B)(2) (Supp.1985). The father now appeals that order, contending 1) that the District Court violated his federal and state constitutional right to due process by conducting the termination proceedings in his absence, and 2) that there was insufficient evidence of a clear and convincing nature on which to base the order terminating his parental rights. We find no reversible error on either point and accordingly affirm the District Court's judgment.

When Randy was three years old, his father shot and killed his wife, Randy's mother. After being convicted of manslaughter, the father was incarcerated in the Maine State Prison from June 1976 until November 1980. In March 1984 the father shot and killed his second wife and was convicted of murder by a New Hamp-

shire court. Since February 1985 the father has been in the New Hampshire State Prison in Concord serving a life sentence without eligibility for parole.

On May 16, 1985, the Maine District Court held a hearing on a petition brought by the Department of Human Services to terminate the father's parental rights to his son, Randy. At that time the father's murder conviction was on appeal in New Hampshire. The father was not present at the hearing but was represented by his attorney. Prior to the hearing the father's counsel filed a motion for an order requiring the father's presence at the hearing and issuing a writ of habeas corpus *ad testificandum*. After hearing oral argument the court denied the father's motions, but it granted a continuance for two weeks to allow the father's counsel to seek alternative methods to secure the father's presence at the hearing.

At the initial hearing the father's counsel made oral representations to the court that he had reached an agreement with the New Hampshire State Prison and that state's Commissioner of Corrections to release the father to the Androscoggin County Sheriff's Department, provided that the county send deputies to New Hampshire to transport the prisoner. He also stated that he had reached an alternative agreement with the New Hampshire State Prison to allow the termination hearing to be conducted in a conference room at the prison. The father's counsel never presented any written evidence or other confirmation of those agreements from the New Hampshire correctional authorities.

On May 30, 1985, the court reconvened. The father's attorney had been unable to secure the father's presence in Maine; thus the two-day termination hearing was conducted in his absence. The father, however, was at all times represented by his counsel who had the opportunity for full cross-examination of all the Department's witnesses. In addition, the court allowed the father to testify through a deposition, taken by the parties on June 14, 1985, at the New Hampshire State Prison. The entire transcript of that deposition was admitted in evidence. The father's counsel was also offered the opportunity to move to reopen the record after the deposition, but he chose not to do so. The District Court entered its termination order on October 16, 1985.

## I. *Due Process*

The father's first contention on appeal is that the District Court denied him his constitutional right to due process by conducting the termination proceedings in his absence. It cannot be disputed that a parent has a fundamental liberty interest in maintaining his familial relationship with his son. *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 554–55, 54 L.Ed.2d 511 (1978); *Danforth v. State Department of Health & Welfare*, 303 A.2d 794, 796–97 (Me.1973). When the State seeks to terminate the relationship between a parent and child, it must do so by fundamentally fair procedures that meet the requisites of due process. *Santosky v. Kramer*, 455 U.S. 745, 752–54, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982). Thus the question in the case at bar is, what process is due. *Id.* "Whether tested by article I, section 6–A of the Maine Constitution or by its federal counterpart, due process is not a static concept; rather, its requirements vary to assure the basic fairness of each particular action according to its circumstances." *In re Jo-Nell C.*, 493 A.2d 1053, 1055 (Me. 1985).

In determining whether procedures followed in parental rights termination proceedings satisfy the constitutional demands of due process, the United States Supreme Court has applied the three criteria enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976), as follows:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safe-

guards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

See *Santosky v. Kramer,* 455 U.S. at 758–68, 102 S.Ct. at 1397–1403 (*Mathews* criteria used to determine if preponderance of evidence burden of proof satisfies due process); *Lassiter v. Department of Social Services,* 452 U.S. 18, 27–31, 101 S.Ct. 2153, 2159–62, 68 L.Ed.2d 640 (1981) (*Mathews* criteria used to determine if indigent parent entitled to counsel to satisfy due process). We will examine the three *Mathews* considerations in reviewing whether the procedural solution adopted by the District Court in the case at bar "struck a balance between competing concerns that was fundamentally fair to the father." *In re Jo-Nell C.,* 493 A.2d at 1055.

■ Applying the first consideration, we recognize that the father has an extremely important interest that will be affected in this proceeding, namely, his liberty interest in maintaining his parental relationship with Randy. The second consideration requires that we look at the procedures used by the District Court to assess the possibility of the risk that those procedures might erroneously deprive the father of that liberty interest in his relationship with his son. We reject the father's contention that the procedures used by the District Court were likely to lead to an erroneous termination of his parental rights because he was not present to assist his counsel in cross-examination of the opposing witnesses. At all stages of the termination proceedings the father was represented by counsel who had the full right to cross-examine all the opposing witnesses. The father's full testimony, admitted in evidence, was taken in deposition form at a time two weeks after all the rest of the evidence had been presented, and his counsel could have reopened the hearing for further cross-examination or other testimony. The District Court judge explicitly stated in his order that he had reviewed the deposition in conjunction with the testimony and exhibits. Defendant has failed to show any prejudice caused by his absence from the hearing in Maine. *See In re Jo-Nell C.,* 493 A.2d at 1056.

■ The third and final *Mathews v. Eldridge* consideration is the governmental interest. In this case the interest of the State of Maine is at least twofold. First, the State is concerned for Randy's best interest. The purpose of the child protection laws is to "[p]romote the early establishment of permanent plans for the care and custody of children who cannot be returned to their family." 22 M.R.S.A. § 4003(4) (Supp.1985). Randy is in need of a permanent family situation: He cannot stay with his father, and other relatives are unable or unwilling to care for him. Second, the State has an additional interest in going forward without the father's physical presence in Maine: Convicted for committing two successive homicides, the father could well be viewed to be a substantial security risk to the court and the general public. The State has a compelling interest in protecting the welfare of its citizens from the chance that the father might escape while in Maine. Thus, even if we assume (without documentary evidence) that New Hampshire prison authorities had both the authority and the willingness to give up custody of their inmate temporarily, Maine was not required to accept that heavy responsibility. The cost and administrative burden entailed in having Maine's correctional or police authorities assume control and custody of a New Hampshire lifer also cannot be ignored in determining what is due process for that lifer in this civil proceeding.

■ After reviewing the *Mathews v. Eldridge* considerations, we find that the procedures followed by the District Court were well-tailored to protect the father's constitutional rights, while at the same time to protect the State of Maine's interest in determining the child's status without undue delay and in avoiding the security risks and the costs and burdens of tak-

ing over from New Hampshire the responsibilities for his incarceration. The father was not denied due process under either the Maine or United States Constitutions. Our decision finds support in the decisions of other courts that have considered this issue. *In re Juvenile Appeal*, 187 Conn. 431, 435–40, 446 A.2d 808, 811–13 (1982); *Matter of Welfare of HGB*, 306 N.W.2d 821, 825–26 (Minn.1981); *Matter of Raymond Dean L.*, 109 A.D.2d 87, 88, 490 N.Y.S.2d 75, 76–78 (1985); *Matter of Rich*, 604 P.2d 1248, 1252–53 (Okla.1979); *Najar v. Oman*, 624 S.W.2d 385, 387–88 (Tex.Ct. App.1981); *In Interest of Darrow*, 32 Wash.App. 803, 807–08, 649 P.2d 858, 860–61 (1982).

The case entitled *In Interest of F.H.*, 283 N.W.2d 202 (N.D.1979), presented the North Dakota Supreme Court with a fact situation almost identical to the one in the case at bar. That case held that the trial court had not violated the due process rights of a father incarcerated in Oregon when it refused to continue a proceeding to terminate that father's parental rights until his future date of parole. The court stated:

> From our review of cases from the various jurisdictions and the principles of law involved, we are compelled to conclude that a convict does not have a constitutional right to personally appear in a civil suit where he has been permitted to appear through counsel and by deposition, if appropriate. Any right to appear personally would have to rest upon convincing reasons and would ultimately be left to the sound discretion of the trial court.

> In making its determination the trial court may take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released,

the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition. The exercise of the trial court's discretion concerning a prisoner's right to appear personally in a civil action will not be overturned by this court in the absence of an abuse of that discretion which we have defined as an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court.

*Id.* at 209 (citations omitted). In *F.H.*, as here, the father had been represented by counsel and had himself testified by deposition. The North Dakota court concluded that the trial court had not abused its discretion by refusing to continue the matter until the father could be present. On the facts of the case at bar there can be little doubt but that the District Court acted well within the discretion given it under M.R. Evid. 611(a) and within the bounds of due process when it denied the father's request to be present and went forward with the termination hearing without him. *Cf. In re Jo-Nell C.*, 493 A.2d at 1055–56 (exclusion from child protection hearing of father during child's testimony that he sexually abused her). The judge specifically considered the security risk that the father presented and the need for an early determination of the child's status. He took appropriate steps to protect the father's rights by appointing competent counsel to represent the father and by ordering the father's deposition to be taken after the father's counsel was familiar with the entire case against him. The District Court neither abused its discretion nor violated the father's due process rights.

## II. *Sufficiency of the Evidence*

The father's second contention on appeal is that there was insufficient evidence of a clear and convincing nature on which the District Court could base the order to terminate his parental rights pursuant to 22 M.R.S.A. § 4055(1)(B)(2) (Supp.1985). Specifically, he argues that the record does not

sufficiently support either of the District Court findings that provided alternative grounds for terminating the father's parental rights; namely, 1) that he is unable to protect Randy from jeopardy and that those circumstances are unlikely to change within a time reasonably calculated to meet the child's needs, § 4055(1)(B)(2)(b)(i); and 2) that he is unable to take responsibility for Randy within a time that is reasonably calculated to meet the child's needs, § 4055(1)(B)(2)(b)(ii).

■ The gravamen of the father's complaint is that his parental rights were terminated because of his long-term incarceration rather than because of any defect in his relationship with his son. Incarceration of a parent, standing alone, does not furnish a ground for automatic termination of parental rights. *In re Daniel C.*, 480 A.2d 766, 768–69 (Me.1984). Incarceration, however, does not insulate an inmate from the termination of his parental rights if the record contains the clear and convincing evidence that would support the termination of the rights of any other parent. *Id.*

■ In the case at bar there was ample evidence before the District Court to support its finding that the father is unable to protect Randy from jeopardy within a time reasonably calculated to meet Randy's needs. Under 22 M.R.S.A. § 4002(6)(A) "jeopardy" may be evidenced by "serious harm," which itself may be proved by showing "severe anxiety, depression or withdrawal, untoward aggressive behavior or similar serious dysfunctional behavior" on the part of the child. 22 M.R.S.A. § 4002(10)(B) (Supp.1985). *See also In re Dean A.*, 491 A.2d 572, 574–75 (Me.1985). The testimony at the hearing showed that Randy has suffered and will continue to suffer emotional trauma unless he is free to be adopted and can achieve a situation of stability. A psychological evaluation of Randy showed that he was a "severely disturbed young boy that would need psychotherapy for years" and that he needed an "extremely stable foster home where

the parents resolved problems cooperatively," rather than through violence. Frank Walsh, a clinical social worker involved with Randy and his family, testified that if by chance the father was released from prison it would still be impossible to reintegrate Randy into the father's home: "I don't see any way that that could possibly happen without Randy needing to be institutionalized, or at least placed in residential treatment." Walsh recommended adoption as soon as possible because of Randy's age (now 13¾ years) and the fact that he would become even more difficult to adopt if termination of the father's parental rights was delayed. Furthermore, there was testimony that there existed a direct correlation between Randy's contacts with his father and his psychological deterioration. The District Court was well justified in finding, on the basis of clear and convincing evidence, that the father could not protect Randy from jeopardy within a time calculated to meet Randy's needs.

Having so found, we need not consider whether the District Court's alternative ground for terminating the father's parental rights (namely, his inability to take responsibility for Randy within a time reasonably calculated to meet the child's needs) was supported by clear and convincing evidence. Under 22 M.R.S.A. § 4055(1)(B)(2)(b), either of the District Court's basic findings is independently adequate to justify the termination of parental rights.

The entry is:

Judgment affirmed.

All concurring.