**In re RYAN M.**

Supreme Judicial Court of Maine.

Argued June 13, 1986.
Decided Aug. 4, 1986.

Brunette, Shumway, Romanow & Ryer, Christopher Ryer (orally), Peter McGee (orally), Portland, for appellants.

James Tierney, Atty. Gen., Jonathan Chapman (orally), Asst. Atty. Gen., Augusta, Gerard Conley (Guardian ad litem) Edward Klein, Portland, for appellees.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

Ryan M.'s mother and step-father appeal from a Superior Court (Cumberland County) judgment affirming the District Court's (Portland) order granting the Department of Human Services' (DHS) petition for a final protection order pursuant to 22 M.R.S.A. § 4035 (Supp.1985–1986). They contend that the District Court judge erred 1) by receiving in evidence Ryan M.'s out-of-court statements without first expressly determining whether Ryan M. was competent to be a witness, and 2) by considering their refusal to cooperate with the DHS in its investigation of the cause of physical abuse committed on Ryan M. They also challenge the sufficiency of the evidence. We find no error and affirm the judgment.

I.

On Monday, May 14, 1984, the director of the day care center that Ryan attended observed severe bruises on both sides of Ryan's head when he arrived at the center that morning. At this time, three year-old Ryan was living with his mother and step-father. The director reported the bruises to the DHS. A DHS child protective services worker went to the day care center later that day and spoke with Ryan and his mother. The mother did not know anything about the marks. She suggested that perhaps Ryan had caught his head in a window. No one other than the mother and step-father had taken care of Ryan over the weekend. A physician, who examined Ryan the following day, concluded that the boy had been slapped because the

bruises across his face were in the shape of a hand.

Over the course of the next six weeks, attempts by a DHS child protection worker to talk with the mother about the bruises proved unsuccessful. On June 22, 1984, the DHS filed a petition for protective custody pursuant to the Child and Family Services and Child Protection Act, 22 M.R.S.A. §§ 4001–4071 (Supp.1985–1986). On that same day, the District Court issued an ex parte order granting temporary custody of Ryan to the DHS. On July 5 and 9, 1984, hearings were held on the preliminary protection order pursuant to 22 M.R.S.A. § 4034. Before the hearing, the mother and step-father moved in limine to exclude from evidence any out-of-court statements made by Ryan. The District Court judge denied the motion and, after hearing the evidence, concluded that Ryan had been the subject of physical abuse in his mother's home. The judge found the situation that led to the slapping had neither been addressed nor corrected by the mother and step-father. He accordingly issued a preliminary protection order granting the DHS custody of the child pending further order of the court. Ryan was subsequently placed in a foster home.

A hearing on the DHS's final protection petition was scheduled on October 15, 1984. On October 12, 1984, Ryan disclosed to his foster mother and a DHS worker that he had been sexually abused by his step-father. The DHS moved for a continuance and for leave to amend its petition to include the new allegations. Both motions were granted.

A full hearing on the petition was held on December 6, 1984, and February 6, 1985. The mother and step-father renewed their motion to exclude from evidence any out-of-court statements made by Ryan. The District Court judge denied the motion. Among the witnesses who testified were two psychologists, both of whom had conducted interviews with Ryan. One psychologist stated that Ryan probably had been sexually abused at some point prior to the

time he was removed from his mother's care. However, he stated that he did not think that the step-father was the perpetrator because the abuse Ryan reported tended to fit the description of abuse committed by an adolescent. The other expert, a psychologist who specializes in the treatment of children who have been sexually abused, stated that she found no reason to disbelieve Ryan's allegations that the step-father committed the sexual abuse. Both the mother and the step-father denied the allegations.

As a result of the hearings, the District Court found by a preponderance of the evidence that Ryan was in circumstances of jeopardy to his health and welfare. He therefore issued an order granting custody of Ryan to DHS. On January 7, 1986, the Superior Court affirmed the order. This appeal followed.

## II.

The first issue is whether the District Court judge erred by receiving in evidence Ryan's out-of-court statements relating to incidents of sexual abuse, without first determining whether Ryan would be a competent witness. The Legislature has clearly provided that in child protection proceedings, out-of-court statements made by a child may be admitted and relied on by the trial judge to the extent of their probative value. Specifically, 22 M.R.S.A. § 4007 (Supp.1985–1986) provides in part:

1. **Procedures.** All child protection proceedings shall be conducted according to the rules of civil procedure and the rules of evidence, except as provided otherwise in this chapter. All the proceedings shall be recorded. All proceedings and records shall be closed to the public, unless the court orders otherwise.

2. **Interviewing children.** The court may interview a child witness in chambers, with only the guardian ad litem and counsel present, provided that the statements made are a matter of record. *The court may admit and consider oral or written evidence of out-of-court state-*

*ments made by a child, and may rely on that evidence to the extent of its probative value.*

(emphasis added).

Despite the unequivocal language of subsection 2 of section 4007 authorizing the reception of a child's out-of-court statements, the mother and the step-father argue that because subsection 1 of section 4007 makes the rules of evidence applicable to child protection proceedings, subsection 2 of the statute was intended only as a hearsay exception and left intact child-witness competency requirements. They contend that under the Maine Rules of Evidence, Rule 601(b), before the child's statements are admissible, the court must first determine that the child is competent to be a witness.[1] We reject this argument for two reasons.

First, the argument ignores the plain meaning of section 4007. *See Bolduc v. Androscoggin County Comm'rs,* 485 A.2d 655, 657–58 (Me.1984) (unless a statute itself discloses a contrary intent, the plain meaning of the words controls). The plain language of subsection 2, without qualification, authorizes the reception in evidence of a child's out-of-court statements.

Second, the structure of the statute is also significant. Subsection 1 of the statute provides that child protective proceedings are to be conducted according to the rules of evidence except as provided otherwise in the Child and Family Services and Child Protection Act. The issue therefore becomes whether subsection 2 otherwise provides that the rules of evidence, particularly Rule 601(b), is inapplicable to these proceedings. We conclude that it does. As previously noted, nowhere does subsection 2 declare that out-of-court statements, to be admissible, must have been made by a declarant who would not have been disqualified as a witness under Rule 601(b).

By expressly authorizing the trial judge to decide whether to admit a child's out-of-court statements, the Legislature, by implication at least, has indeed otherwise provided that the rules of evidence are not applicable to such statements in child protection proceedings. By this enactment, the Legislature obviously intended to confer upon the trial judge a broad discretion, unfettered by the rules of evidence, in considering whether to admit a child's out-of-court statements. Subsection 2 expressly leaves to the trial judge the determination of the weight to be given to these statements, specifically providing that a judge "may rely on that evidence to the extent of its probative value." Since the Legislature has provided that the rules of evidence do not apply when the court considers whether to admit a child's out-of-court statements, the mother and step-father's argument that competency requirements apply to the child-witness must fail.

■■■ The mother and step-father also argue that the trial judge erred in relying on Ryan's out-of-court statements in finding as a fact that Ryan had been sexually abused by his step-father. They contend that because Ryan's statements were not corroborated by any other testimony, they have no probative value as a matter of law. We disagree. There is no requirement that a child's out-of-court statements admitted pursuant to 22 M.R.S.A. § 4007(2) be corroborated. A child's statements are sufficient to support a finding if they are not contradictory, unreasonable or incredible. *Cf. State v. Pierce,* 438 A.2d 247, 252 (Me. 1981) (in criminal proceeding, uncorroborated testimony of a young child is sufficient to support a finding if not contradictory, unreasonable or incredible).

Here, Ryan's statements are not so contradictory, unreasonable or incredible that

---

1. Rule 601(b) provides:
 **(b) Disqualification of Witness; Interpreters.** A person is disqualified to be a witness if the court finds that (a) the proposed witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth. An interpreter is subject to all the provisions of these rules relating to witnesses.

a trial judge would commit error by relying on and giving probative value to his out-of-court statements. Inconsistencies as to the frequency of the abuse go to the weight of the evidence and the trial judge's assessment of the weight of the evidence is entitled to considerable deference. *See Tonge v. Waterville Realty Corp.*, 448 A.2d 902, 905 (Me.1982). Furthermore, as one of the psychologists explained at trial, because of anxiety and the different phases through which a victim passes in disclosing the incidents, it is not unusual for a young child to be inconsistent in explaining incidents of sexual abuse. Accordingly, this argument is without merit.

### III.

The mother and the step-father next argue that the trial judge erred in admitting into evidence their refusal to cooperate with the DHS in its investigation of the cause of Ryan's facial bruises. After these bruises were reported to the DHS, a child protective worker made numerous attempts to speak with the mother. At trial, the child protective worker stated that the step-father frustrated his attempts to speak with the mother on the telephone by swearing at him and then hanging up the receiver. On June 21, 1984, after determining that the mother was at home, the DHS worker, accompanied by two police officers, went to her apartment. He found her outside with Ryan. The mother initially stated that she did not wish to speak with him, but after she was told that the DHS was considering seeking a preliminary protection order, she agreed to go to its offices to be interviewed. However, after her arrival, she declined to talk with the DHS worker and telephoned her attorney.

The mother admitted that she had refused to cooperate with the DHS. When asked during cross-examination about the June 21 meeting with the DHS worker, counsel objected on the ground that evidence of the mother's exercise of her right to remain silent was inadmissible. The court overruled the objection. Later, the step-father testified that he had sworn at and hung up on the DHS worker several times. When the step-father was questioned about an incident that occurred when a police officer came to his apartment, counsel objected on the ground that the step-father had a right to remain silent and a right not to cooperate with the DHS. The court overruled the objection. The step-father then explained that an altercation had ensued in which he spat on a police officer.

The trial judge found as a fact that both the mother and the step-father had refused to cooperate with the DHS in its reasonable efforts to investigate the cause of Ryan's bruises. As we understand their argument, the mother and step-father contend that evidence of their refusal is inadmissible in a child protection proceeding because of their right not to incriminate themselves. *See* U.S. Const.Amend. V; Me. Const. art. 1, § 6. We disagree.

 The self-incrimination privilege of the fifth amendment, made applicable to the States by reason of the fourteenth amendment, "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). The protection against self-incrimination provided by our State Constitution is equivalent in scope to that of the fifth amendment. *See State v. Vickers*, 309 A.2d 324, 326 (Me.1973). Child protection proceedings are not criminal in nature, but are civil proceedings where the state, as parens patriae, seeks to protect the well-being of a child. *See In re Jo-Nell C.*, 493 A.2d 1053, 1055 (Me.1985). In a criminal case the assertion of the fifth amendment privilege is not a proper subject of comment. *See* M.R.Evid. 512 advisers' note. However, when a party in a civil proceeding exercises

his privilege against self-incrimination, the well-established rule is that the fifth amendment does not prevent the trier of fact from drawing an adverse inference against the party. In addition, counsel may comment on the claim. *See, e.g., Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Cabral-Avila v. Immigration and Naturalization Serv.,* 589 F.2d 957 (9th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1245, 59 L.Ed.2d 472 (1979); *Cokely v. Cokely,* 469 So.2d 635 (Ala.Civ.App.1985); *Gash v. Kohm,* —— Ind.App. ——, 476 N.E.2d 910 (1985); *Custody of Two Minors,* 396 Mass. 610, 487 N.E.2d 1358 (1986). Our rules of evidence specifically incorporate this principle and permit an adverse inference to be drawn against a party who exercises his privilege against self-incrimination in a civil proceeding. M.R.Evid. 513(a); *see* Field & Murray, *Maine Evidence* § 513.1, at 124–25 (1976). Rule 513(a) provides:

> **(a) Comment or Inference Permitted.** The claim of a privilege by a party in a civil action or proceeding, whether in the present proceeding or upon a prior occasion, is a proper subject of comment by judge or counsel. An appropriate inference may be drawn therefrom.

■ Since the fifth amendment does not prevent an adverse inference against a party who exercises his privilege against self-incrimination in a civil action, the evidence of the mother and step-father's refusal to speak and cooperate with the DHS did not violate their constitutional privilege against compelled self-incrimination. Accordingly, the argument that the trial judge committed reversible error in admitting evidence of the refusal to cooperate with the DHS is without merit.

### IV.

■ Finally, the mother and step-father argue that the evidence is insufficient to support the trial judge's decision. We disagree. The evidence clearly supports the District Court's conclusion that Ryan's health and welfare would be jeopardized if he were returned to his mother and step-father. *See In re Sabrina M.,* 460 A.2d 1009 (Me.1983).

The entry is:

Judgment affirmed.

All concurring.