**In re ERIKA R.**

Supreme Judicial Court of Maine.

Argued May 2, 1989.
Decided Aug. 4, 1989.

William C. Leonard (orally), Bath, for plaintiff.

James E. Tierney, Atty. Gen., Erna J. Koch (orally), Asst. Atty. Gen., Catherine B. Johnson, Guardian Ad Litem, Damariscotta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

McKUSICK, Chief Justice.

In this child protection action brought pursuant to the Child and Family Services and Child Protection Act, 22 M.R.S.A. §§ 4001–5005 (Supp.1988), the District Court (Wiscasset, *O'Rourke, J.*) found by a preponderance of the evidence that Erika R. was in circumstances of jeopardy to her health or welfare because of sexual abuse by her father and granted custody of Erika to the Department of Human Services (DHS). 22 M.R.S.A. §§ 4002(6) & (10),

4035, 4036. Erika's parents appeal the affirmance by the Superior Court (Lincoln County, *Fritzsche, J.*) of the District Court's child protection order. The parents contend 1) that there was insufficient evidence to support the trial court's finding that Erika was in jeopardy and 2) that the trial court erred in admitting the testimony of DHS's expert witnesses. Finding no error, we affirm the judgment.

I.

In April of 1985 DHS received a referral alleging that Erika was engaging in "extreme sexual acting out behavior" with other children in her neighborhood.[1] After investigating this allegation, DHS on May 31, 1985, filed a petition for a child protection order, with supporting affidavit, alleging that Erika, then aged 8, was "in immediate risk of serious harm" because both her father and her brother had "allegedly performed sexual activity" with Erika.[2] That same day the District Court (Ellsworth, *J. Smith, J.*) issued an ex parte order appointing a guardian ad litem and granting custody of Erika to DHS pursuant to 22 M.R.S.A. §§ 4034, 4036. After six days of hearings on the preliminary child protection order, the court (*E. Smith, A.R.J.*) found that Erika was in immediate risk of serious harm and, pending final hearings on the child protection petition, ordered: (1) that Erika be returned to her home in the custody of her mother and DHS;[3] (2) that Erika's father be prohibited from staying overnight at the family home and from having unsupervised contact with Erika; and (3) that Erika's parents engage in family counseling.

---

**1.** DHS had received a previous referral for the same kind of behavior in May of 1984. On DHS's recommendation, the family met several times with Dr. Thomas Gaffney, a clinical psychologist, who concluded that Erika had been sexually abused but not by her father or anyone in the community in which the family was then living. DHS therefore closed the case.

**2.** *DHS's* initial petition sought a child protection order for both Erika and her brother. In the final child protection order, the trial court found that DHS had failed to establish by a preponderance of the evidence that the brother was in circumstances of jeopardy and dismissed the petition as it related to him. That finding has not been appealed, and this opinion therefore recites only the facts and procedural history of this case as they relate to Erika.

**3.** This "split" disposition between the mother and DHS would not be possible following the enactment of P.L. 1985, ch. 739, § 10, effective April 18, 1986 (codified at 22 M.R.S.A. § 4036(4) (Supp.1988)).

In October 1985 the court granted the parents' motion to transfer the case to Wiscasset as a result of the family's move to Waldoboro. Between May and December of 1986, the court (Wiscasset, *O'Rourke, J.*) held 13 days of final hearings on the child protection petition. The court heard testimony from 14 witnesses and had available the transcripts from the preliminary hearings, video and audio tapes and other exhibits, and the report of the guardian ad litem. By order dated April 21, 1987, and amended to correct typographical errors on July 8, 1987, the court found that DHS had established by a preponderance of the evidence that Erika was in circumstances of jeopardy within the meaning of 22 M.R.S.A. §§ 4002(6) & (10) and 4035, as a result of being subjected to sexual abuse by her father. Pending a dispositional hearing, the court granted custody of Erika to DHS. The court later denied the parents' motion for a new trial.

The court entered its final order of disposition on August 25, 1987, leaving custody of Erika with DHS, ordering treatment for the parents, and determining visitation and child support schedules. The court ordered review of its child protection order within 18 months or on motion of any party in accordance with 22 M.R.S.A. § 4038(1).[4] The court subsequently entered its findings of fact and conclusions of law, and the parents appealed to the Superior Court pursuant to M.R.Civ.P. 76D. The Superior Court affirmed and the parents appealed to this court.

## II.

◼ The first issue raised by the parents in this appeal challenges the sufficiency of the evidence supporting the trial court's finding that Erika is in jeopardy because of sexual abuse by her father. Under 22 M.R.S.A. § 4035(2), that factual finding of

jeopardy need only be by a preponderance of the evidence. On appeal our task is limited to determining whether the trial court's factual findings are "supported by competent evidence and, therefore, not clearly erroneous." *See In re Sabrina M.*, 460 A.2d 1009, 1014 (Me.1983) (citing *Harmon v. Emerson*, 425 A.2d 978, 982 (Me. 1981)). It is not enough to justify overturning the trial court's conclusion that a different factfinder might have reached a different conclusion. Having reviewed the voluminous record in this case, we conclude that the trial court's findings are amply supported by the evidence.

The DHS caseworker initially assigned to this case testified that after she received the referral she interviewed Erika on May 10, 1985, at her school. Although the parents make much of the way the interview was conducted and reported, the trial court found that Erika "implicated her father as the person who had sexually molested her." On this record that finding is not clearly erroneous. Erika referred to the perpetrator as a "man" during most of the interview, and she told the caseworker that the man made her brother go outside while he touched her. She also told the caseworker that the man told her it was a secret and that if she told anyone he would go to jail or be killed.

Following this interview the caseworker interviewed a neighborhood child who, according to Erika, had seen what the man did to Erika. That child described sexual activity involving Erika's father, Erika, and herself. That evening the caseworker confronted Erika's parents at home and, after an angry and emotional scene, the parents agreed that the father would move out of the house temporarily. During the month of May 1985 the caseworker interviewed other neighborhood children, one of whom described seeing the father in bed with Erika.

---

**4.** 22 M.R.S.A. § 4038(1) (Supp.1988) provides:

If a court has made a final protection order, it shall review the case at least once within 18 months of the final protection order and at least every 2 years thereafter, unless the child has been emancipated or adopted.

At oral argument the parties conceded that the final protection order has not been reviewed

even though well over 18 months has passed. The obligation to review such orders is statutory and is unaffected by the fact that one of the parties has chosen to appeal. It is the responsibility of DHS and counsel for the parents as well as the court to ensure that this review is accomplished in a timely fashion.

On May 31, 1985, upon learning that the father was planning to move back into the home, DHS filed its child protection petition and obtained custody of Erika, who was placed in a foster home. The caseworker testified that in subsequent interviews, Erika revealed that her father had touched her in the wrong places. Erika talked about sexual activities with her father and said that her mother and father had told her not to tell anyone because her father would go to jail or be killed.

After the preliminary hearings on the child protection petition, the court ordered Erika returned to her home in the custody of both DHS and her mother. After the family moved to Waldoboro, a new DHS caseworker was assigned to the case and testified at the final hearings about interviews with Erika at which Erika implicated her father as the perpetrator.

In addition to the testimony of the two DHS caseworkers, the trial court heard the testimony of a corporal with the Alaska State Troopers. He testified about an interview with a boy who had formerly lived near Erika's family and had stayed overnight in their home. The boy told of an incident in which Erika's father was playing with the children and improperly touched him, as well as Erika and her brother.

Finally, the trial court heard from several expert witnesses who had interviewed Erika and other members of her family. Although there was a great deal of testimony regarding Erika's reluctance to discuss sexual matters with these professionals, two psychologists concluded that Erika had had sexual contact with her father. Even the psychologist called by counsel for the parents would not rule out the possibility that the father had sexually abused Erika.

Based on all of this testimony, the trial court was amply justified in finding by a preponderance of the evidence that Erika was in jeopardy because of sexual abuse by her father. The parents point to the numerous inconsistencies and outright contradictions contained in the children's testimony, arguing that this testimony should have been excluded as unreliable hearsay. As the parents concede, however, hearsay statements of children are specifically made admissible under 22 M.R.S.A. § 4007(2), which provides in relevant part:

The court may admit and consider oral or written evidence of out-of-court statements made by a child, and may rely on that evidence to the extent of its probative value.

The trial court has broad discretion in determining whether a child's statements are reliable, although such statements will not support a finding if they are "contradictory, unreasonable or incredible." *In re Ryan M.*, 513 A.2d 837, 840 (Me.1986). The trial court here noted that there were inconsistencies in the children's testimony and gave no weight to some of that testimony as a result. Those determinations were for the trial court to make, and we find no abuse of discretion on this record.

The parents also criticize the actions of the DHS caseworkers in conducting the investigation in this matter. With the benefit of hindsight, we note that these caseworkers at times showed poor judgment and at times acted in less than a commendable fashion. But any inadequacies in the conduct of the DHS investigation were brought to the trial court's attention through the extensive cross-examination of those caseworkers. As the trial court noted in the final protection order:

The Court is aware of the tremendous burden that has been placed on [DHS] by reason of the literal explosion that has occurred in the field of sexual molestation of minors; the fiscal constraints under which [DHS] must operate; the dearth of highly qualified and trained case workers available to [DHS] at the pay scale.

It was for the trial court as factfinder to assess the weight and credibility of the testimony, including that of the DHS caseworkers, in light of all these circumstances.

### III.

The parents also contend that the trial court abused its discretion in admitting the testimony of certain expert wit-

nesses called by DHS. First, they argue that the expert testimony was flawed because DHS caseworkers gave these experts misleading accounts of what had occurred so that the experts were not fully informed of the facts. The parents also argue, specifically with respect to the testimony of Dr. Gaffney, that he did not have the chance to complete his evaluation or to interview the father before giving his opinion. Finally, the parents argue that certain of the techniques used by these expert witnesses in evaluating Erika were unreliable and rendered the expert opinions inadmissible.

We have said many times that the qualification of an expert witness and the scope of his opinion testimony are matters within the discretion of the trial court. *See, e.g., Minott v. F.W. Cunningham & Sons*, 413 A.2d 1325, 1329–30 (Me.1980); *Parker v. Hohman*, 250 A.2d 698, 702 (Me.1969). "The extent of the expert's knowledge of the subject matter and of the material data used in formulating his opinion ... provided such facts are not based on mere speculation, goes to the weight rather than to the admissibility of his testimony." *Warren v. Waterville Urban Renewal Auth.*, 235 A.2d 295, 300–01 (Me.1967), *cert. denied*, 390 U.S. 1006, 88 S.Ct. 1249, 20 L.Ed.2d 105 (1968). In this case all of the arguments raised by the parents against the expert testimony go to the weight of that testimony, not its admissibility, and all were brought to the attention of the trial court during the final child protection hearings. In these circumstances we find no abuse of discretion in the admission of the expert testimony.

■ The parents next challenge the expert testimony of Leslie Devoe, a licensed clinical social worker (LCSW) who interviewed all members of Erika's family over a five-month period from November 1985 to March 1986. The parents contend that Devoe's testimony should have been excluded because she failed to comply with the statute regulating LCSWs. 32 M.R.S.A. § 7001–A(10) (1988). Section 7001–A(10) defines the term "psychosocial evaluation" and provides in relevant part:

In the process of making a diagnosis and formulating a treatment plan for mental illness or emotional disorder, the social worker shall assure, consistent with rules to be promulgated by the board, that the person is examined by a physician and may take into account the physician's opinion in forming the psychosocial evaluation.

The record reveals that Devoe did not have Erika examined by a physician during the course of her psychosocial evaluation. Nonetheless, as the trial court found, Devoe was not engaged in "making a diagnosis and formulating a treatment plan for mental illness or emotional disorder" within the meaning of the statute. Devoe testified that diagnosing a person involves assigning a specific name and number derived from a manual published by the American Psychiatric Association. She was not trying to diagnose Erika, but was simply evaluating the family, and the trial court's determination that Devoe was qualified to testify about that evaluation and that her testimony would be helpful to the court was not an abuse of discretion. Moreover, even if Devoe's failure to obtain a physician's examination did violate the regulatory statute, that failure goes to the weight of her testimony, not to its admissibility. *Cf. State v. Melvin*, 390 A.2d 1024, 1028–29 (Me.1978) (upholding trial court's determination that a pathologist who had performed an autopsy was qualified as an expert to testify about the victim's cause of death; lack of certification by the Board of Forensic Pathologists went to the weight of the testimony, not its admissibility).

■ Finally, the parents contend that the trial court erred in preventing their expert witness, Dr. Brian Rines, from testifying about conversations he had with Devoe's supervisors about her evaluation of Erika. The trial court sustained DHS's objection to this testimony on hearsay grounds, and we find no error in that determination. M.R.Evid. 801, 802. The testimony was offered for the truth of the statements made by those supervisors, and it falls within no recognized exception to the hearsay rule.

Because we affirm the trial court's finding of jeopardy based on sexual abuse by the father, we have no occasion to address the parents' challenge to the trial court's alternative and independent ground for its finding of jeopardy.

The entry is:

Judgment affirmed.

All concurring.