650 N.E.2d 290 (1995)
272 Ill.App.3d 461
208 Ill.Dec. 833
In the Interest of C.J., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Alicia Jones, Respondent-Appellant).
No. 3-94-0605.
Appellate Court of Illinois, Third District.
May 15, 1995.
*291 Max D. Cartwright, Moline, for Alicia Jones.
John X. Breslin, Deputy Director, Robert M. Hansen, State's Attorneys Appellate Prosecutors, Ottawa, and Marshall E. Douglas, State's Atty., Rock Island, for the People.
Presiding Justice STOUDER delivered the opinion of the court:
The trial court granted a petition by the State to terminate the parental rights of the respondent, Alicia Jones, to her three-yearold son, C.J. The respondent appeals. For the reasons which follow, we reverse and remand for further proceedings.
The record reveals that C.J. was born on July 30, 1991, while the respondent was incarcerated in the Dwight Correctional Center for Women in Dwight, Illinois. Subsequently, the Illinois Department of Children and Family Services (DCFS) took protective custody of C.J. and placed him in licensed foster care. On August 27, 1991, a juvenile petition was filed alleging that C.J. was a dependent minor. Specifically, it alleged that the child lacked proper care due to the incarceration of his mother, and that his father was unknown.
On April 2, 1992, a letter from the respondent to her appointed counsel was filed with the court. The letter indicated that the respondent wanted to relinquish her rights to C.J. At that time, she was incarcerated in the Ohio Reformatory for Women after being released from the Dwight facility. The court then entered stipulated orders which adjudicated C.J. dependent and continued his custody in licensed foster care under the guardianship of DCFS.
On February 7, 1994, DCFS filed a petition to terminate parental rights. The petition alleged that the mother and unknown father were unfit parents for: (1) failing to maintain a reasonable degree of interest, concern or responsibility for the child's welfare; and (2) evidencing an intent to forego their parental rights by their failure for a period of 12 months to visit the child, to communicate with the child or agency, or to maintain contact with and plan for the future of the child. 750 ILCS 50/1 D(b), (n) (West 1992).
*292 On April 11, 1994, a letter from the respondent was filed with the court. In the letter, the respondent told the court that she was currently incarcerated in the Northeast Prerelease Center in Cleveland, Ohio. She said that she wanted to retain her parental rights with her son and to have him placed with her after her release. She noted that she had tried unsuccessfully to contact C.J.'s social worker for approximately one year. Lastly, she requested a caseworker who would keep her advised about her son.
On May 17, 1994, the respondent filed a motion to continue the termination hearing scheduled for July 19, 1994. The motion stated that the respondent wished to contest the petition and that she would not be released from prison in Ohio until May 1, 1995. Therefore, she requested a continuance until she could personally attend. Alternatively, she requested that the hearing be continued at the end of the State's evidence so she could review the transcripts from the proceeding and respond accordingly.
On July 19, 1994, the court denied themotion and proceeded to the hearing on the petition without the respondent's participation.
At the termination hearing, three caseworkers from Lutheran Social Services (LSS) testified. Robert VanSevern stated that he had been C.J.'s caseworker since October 1993. When he became the caseworker, the respondent's last known address was the Cuyahoga County Jail in Cleveland, Ohio. He never attempted to determine the respondent's location or send her copies of any client service plan since C.J.'s file had already been screened for termination of parental rights.
Kimberly Williams testified that she was C.J.'s caseworker from August 1991 until February 1992. She arranged a visit between the respondent and C.J. on December 17, 1991. During the visit, the respondent asked about C.J.'s welfare and indicated that she was considering surrendering her parental rights. The respondent did not want Williams to bring C.J. to Dwight for a visit the next month. Williams told her to contact her to request a visit and left her business card.
On December 19, 1991, Williams sent a letter to the respondent. The letter noted C.J.'s location, his foster parent, and information about requesting visitation. Williams also sent letters to the respondent at Dwight dated February 12, 1992, and July 7, 1992. The respondent did not contact Williams while she remained the caseworker. A client service plan prepared by Williams stated that the respondent was released from Dwight on February 20, 1992.
Toni Weeks testified that she was C.J.'s caseworker from October 1992 to October 1993. Weeks noted that in January 1993 she wrote a letter to the respondent's maternal grandmother requesting the respondent's current address. The grandmother gave her an address at the Cuyahoga County jail in Ohio.
Weeks further testified that on February 2, 1993, she sent a certified letter to the respondent. In the letter, Weeks told the respondent that she was aware of the respondent's earlier letter indicating that she wished to terminate her parental rights. Weeks advised the respondent that the termination proceedings had not yet begun and that she was willing to assist the respondent toward this end. She never received any response from the respondent. However, Weeks also testified that the address stated on the letter was Cleveland, Illinois. She admitted that the address was a mistake, but she claimed that the envelope said Cleveland, Ohio. She had no copy of the envelope in the file. Also, she testified that the return receipt for the letter was signed by the respondent and received by LSS but was not in the file. Weeks did not attempt to contact the respondent after February 1993.
Throughout the proceedings, the respondent was represented by counsel who cross-examined each of the State's witnesses and submitted the respondent's 1994 letter which indicated that she did not want her parental rights to C.J. to be terminated.
At the conclusion of the hearing, the trial court found that the State had proved its allegations of unfitness and terminated the respondent's parental rights.
*293 On appeal, the respondent contends that her statutory and constitutional rights were violated when the trial court denied her motion to continue and proceeded to trial in her absence without giving her a reasonable opportunity to be heard. In response, the State argues that the respondent was afforded an adequate opportunity to be heard at the termination hearing. Specifically, it notes that the respondent was represented by competent counsel throughout the proceedings and that counsel introduced into evidence the respondent's letter which noted that she wished to retain her parental rights.
A parent's interest in maintaining a parental relationship with her child is a fundamental liberty interest protected by the due process clause of the fourteenth amendment. (Santosky v. Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599.) Moreover, Illinois law provides that a parent has a right to be present at a hearing to terminate her parental rights. (See 705 ILCS 405/1-5 (West 1992).) However, it is well established that lawful incarceration necessarily makes unavailable many rights and privileges of the ordinary citizen. Wolff v. McDonnell (1974), 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935.
The United States Supreme Court has applied three criteria to determine whether procedures followed in parental rights termination proceedings satisfy the constitutional demands of due process. (Mathews v. Eldridge (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18.) They are: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Mathews v. Eldridge (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18.
In the instant case, both parties note that Illinois law states that a parent has a right to be present at a hearing to terminate her parental rights. (See 705 ILCS 405/1-5 (West 1992).) However, the respondent concedes that the statute does not state that the parent must be present at a termination hearing. Furthermore, as we have noted, prisoners do not enjoy the same rights and privileges as ordinary citizens. Therefore, we will apply the Mathews criteria to determine whether the respondent was denied due process of law when she was denied access to the hearing or any alternative method of presenting evidence.
Applying the first criterion, we recognize that the respondent has a very important interest that will be affected by the termination proceeding; specifically, her liberty interest in maintaining her parental relationship with C.J.
The second consideration requires us to analyze the procedures used by the trial court to assess the risk that those procedures might erroneously deprive the respondent of her parental relationship with C.J. We agree with the respondent that the procedures, or lack thereof, used by the trial court might well have led to an erroneous deprivation of her parental rights.
Here, the respondent was not allowed to be present at the termination hearing. Although a number of other states have held that a prisoner does not have an absolute right to be present at the hearing, those states have also held that the parent's due process rights are denied unless the parent is given a meaningful opportunity to be heard and defend through alternative procedures. (In re Randy Scott B. (Me. 1986), 511 A.2d 450 (parent's evidence deposition taken and admitted at termination hearing); In re Interest of L.V. (1992), 240 Neb. 404, 482 N.W.2d 250 (parent participated in hearing via telephone); In re Juvenile Appeal (1982), 187 Conn. 431, 446 A.2d 808 (continuance granted after State's case; complete transcript given to parent, who then testified via telephone).
The final Mathews consideration is the governmental interest. The government's function in seeking to terminate parental rights is an aspect of its role as parens patriae. When the child whose interest is to be protected is very young, delay in adjudication imposes a particularly serious cost on governmental functioning. In re Juvenile Appeal (1982), 187 Conn. 431, 446 A.2d 808.
*294 In the instant case, the governmental interest would not have been unduly burdened by allowing the respondent a better opportunity to present evidence at the termination proceeding. Although a continuance until the respondent was released from prison is not necessary, other, less time-consuming methods could have been allowed in order to afford the respondent due process. See, e.g., In re Randy Scott B. (Me.1986), 511 A.2d 450; In re Interest of L.V. (1992), 240 Neb. 404, 482 N.W.2d 250; In re Juvenile Appeal (1982), 187 Conn. 431, 446 A.2d 808.
The State argues that the respondent has waived her right to now argue that she is entitled to an evidence deposition since she did not do so below. We reject the State's argument. The respondent's motion for continuance argued in the alternative that the hearing be continued at the end of the State's case so that she may review the transcripts and respond accordingly. Furthermore, the trial court denied the defendant's motion to continue and immediately proceeded with the termination hearing, which gave the respondent no time to file a motion for deposition after her motion for continuance was denied.
As applied to the facts of this case, the balancing test of Mathews v. Eldridge supports the respondent's claim of a violation of due process. Therefore, we remand this cause for a new termination hearing and order the trial court to give the respondent a better opportunity to participate in the proceeding. The exact method of participation is left to the judge's discretion. In choosing, it should consider the examples set forth in cases such as In re Randy Scott B. (Me. 1986), 511 A.2d 450; In re Interest of L.V. (1992), 240 Neb. 404, 482 N.W.2d 250; In re Juvenile Appeal (1982), 187 Conn. 431, 446 A.2d 808.
Accordingly, the judgment of the circuit court of Rock Island is reversed, and the cause is remanded for further proceedings.
Reversed and remanded.
SLATER and HOLDRIDGE, JJ., concur.