IN THE MATTER OF RENDER

Docket No. 77119. Submitted June 5, 1985, at Grand Rapids.—Decided September 3, 1985.

The Department of Social Services filed a petition in the Muskegon Circuit Court to terminate the parental rights of Linda B. Render, respondent, and the putative father in Tamara L. Render. At a hearing on April 29, 1983, the probate court ordered placement of the child in foster care because of respondent's long history of mental illness. The court held a hearing on June 13, 1983. There was some discussion of the possibility that the alleged father would take custody of the child. The court adjourned the matter until completion of a study of the father's home. Respondent's attorney agreed to this adjournment. The probate court held the dispositional hearing on January 30, 1984. At that time, respondent was in the county jail. She was served at the jail with a notice of the hearing. However, respondent's attorney stated that he only learned of her incarceration on the day of the hearing. Without further inquiry, the court directed the prosecutor to proceed with his proofs. The court, Tom H. Linck, J., made findings of fact and terminated Linda Render's parental rights. She appealed *Held:*

1. The court properly asserted jurisdiction.

2. The court acted timely.

3. The court erred in proceeding with the dispositional hearing in Linda Render's absence without making an effort to secure her presence. Given the fact that she was in custody, she did not waive her right to be present merely by remaining silent after notice of the hearing.

Remanded with instructions.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — BURDEN OF PROOF.

The state, to terminate the rights of a parent in a child, must

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Parent and Child §§ 5, *25 et seq.*

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

[2] Am Jur 2d, Constitutional Law §§ 804 *et seq.*

See the annotations in the ALR3d/4th Quick Index under topic Due Process of Law.

prove by clear and convincing evidence that termination is warranted.

2. CONSTITUTIONAL LAW — DUE PROCESS.

Identification of the specific dictates of due process for purposes of determining the constitutional adequacy of administrative procedures requires consideration of three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and adminsitrative burdens that the additional or substitute procedural requirement would entail.

*Harold Closz, III*, Prosecuting Attorney, and *John M. Karafa*, Assistant Prosecuting Attorney, for the Department of Social Services.

*Paul M. Ladas*, for Linda B. Render.

Before: R. M. MAHER, P.J., and BEASLEY and SHEPHERD, JJ.

SHEPHERD, J. Respondent Linda Render appeals as of right from an order terminating her parental rights. Respondent raises three issues. Two of her claims lack merit. The third, that the probate court failed to take sufficient steps to secure respondent's presence at the dispositional hearing, has some merit. We remand the matter to the probate court for further proceedings.

The first two claims call for little discussion.

Respondent argues that the probate court never made a clear determination of jurisdiction in this matter. The record indicates otherwise. At the hearing on April 29, 1983, the probate court ordered placement of the child in foster care because of respondent's long history of mental illness. We conclude that the court properly asserted its juris-

diction in this case. MCL 712A.2(b); MSA 27.3178(598.2)(b).

Respondent also argues that the probate court failed to comply with MCL 712A.19; MSA 27.3178(598.19), which requires that "[i]n all cases in which the child is placed in foster care, the cause shall be reheard not more than 6 months after entry of the order of disposition". The probate court placed the child in temporary foster care on April 29, 1983. The court held a hearing on June 13, 1983. There was some discussion of the possibility that the alleged father would take custody of the child. The court adjourned the matter until completion of a study of the father's home. Respondent's attorney agreed to this adjournment. Respondent fails to mention the June 13 hearing in her brief on appeal. There was no violation of MCL 712A.19.

The probate court held the dispositional hearing on January 30, 1984. Respondent was in the county jail. Respondent was served at the jail with a notice of the hearing. However, respondent's attorney stated that he only learned of her incarceration on the day of the hearing. Without further inquiry, the court directed the prosecutor to proceed with his proofs. Sometime in January, 1984 (from the record it is not clear exactly when), respondent was sentenced to from two to four years imprisonment.

Respondent argues that the probate court's failure to secure her presence at the hearing deprived her of due process of law. US Const, AM XIV; Const 1963, art 1, § 17. Petitioner asserts that respondent waived the right to be present by failing to contact her attorney after being served with notice of the hearing.

The issue is whether due process required the probate court to make an affirmative effort to

secure respondent's presence. On the facts of this case, we believe it did.

Even in ordinary civil actions, each party is entitled to be present in the courtroom "at all stages during the actual trial of the action". 75 AM Jur 2d, Trial, § 51, p 164 (citations omitted). See, *Hunter v Szumlanski,* 124 Mich App 521; 335 NW2d 75 (1983), *rev'd on other grounds* 418 Mich 958 (1984); *Florence v Moors Concrete Products, Inc,* 35 Mich App 613; 193 NW2d 72 (1971), *lv den* 387 Mich 761 (1972). "They must be given the opportunity to be present, but if that opportunity is given, their absence during the trial does not affect the right to proceed." 75 Am Jur 2d, *supra* (footnote omitted).

In this case the state seeks to terminate respondent's parental rights. The requirements of due process in this context are much greater than in the ordinary civil action. As noted by Justice FITZGERALD in *Westland Convalescent Center v Blue Cross & Blue Shield of Michigan,* 414 Mich 247, 261; 324 NW2d 851 (1982):

"Notice and the opportunity to be heard are fundamental concepts in the jurisprudence of our state and federal courts. No rigid rule determines which interests will be protected or unprotected; the conclusion to be drawn is that what is procedurally fair in one situation to protect the rights of individuals may be unfair in another."

A parent's interest in retention of his or her rights "undeniably warrants deference and, absent a powerful countervailing interest, protection". *Stanley v Illinois,* 405 US 645, 651; 92 S Ct 1208; 31 L Ed 2d 551 (1972); *Reist v Bay Circuit Judge,* 396 Mich 326, 341-342; 241 NW2d 55 (1976) (LEVIN, J). Due to the fundamental nature of this interest, the state bears the burden (imposed by

the federal constitution) of proving by clear and convincing evidence that termination of parental rights is warranted. *Santosky v Kramer,* 455 US 745; 102 S Ct 1388; 71 L Ed 2d 599 (1982).

In Michigan, both the courts and the Legislature have done more than react to federal mandates in parental rights termination proceedings. For example, we embraced the "clear and convincing evidence" standard long before *Santosky, supra.* See, *In the Matter of Laflure,* 48 Mich App 377; 210 NW2d 482 (1973), *lv den* 390 Mich 814 (1973). Although the Supreme Court held, in *Lassiter v Dep't of Social Services of Durham County, North Carolina,* 452 US 18; 101 S Ct 2153; 68 L Ed 2d 640 (1981), that the Fourteenth Amendment does not require appointment of counsel for the respondent in every such proceeding, the Michigan courts have reached the opposite conclusion. *Reist, supra* (requiring appointment of counsel for respondent on *appeal* of right), MCR 1985, 5.906(C), *In the Matter of Martin W Cobb,* 130 Mich App 598, 600; 344 NW2d 12 (1983). The Legislature has acknowledged the state's own interest in an accurate and just decision by requiring that the parents appear at the dispositional hearing "to show the efforts made by them to reestablish a home for the child" and, upon rehearing, "to show why the child should not be placed in permanent custody of the court". MCL 712A.19.

Thus, respondent's parental rights consitutue a "liberty" interest entitled to constitutional protection. One analytical mode for ascertaining the requirements of due process in this area is that used by the United States Supreme Court in *Mathews v Eldridge,* 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976):

"[I]dentification of the specific dictates of due process

generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (Citation omitted.)[1]

As noted above, the respondent's interest in her parental rights is a compelling one. The risk of an erroneous deprivation is increased in the parent's absence. The Legislature has recognized this by requiring the parent's presence at the hearing. MCL 712A.19. Though respondent had an attorney at the dispositional hearing, it is impossible to determine whether she could have provided the attorney with information helpful to her defense. We are "not in a position to know whether in fact any prejudice resulted". *Florence, supra.* p 621. It cannot be doubted that, in many parental rights termination hearings, the presence of the very person whose rights the state aims to take away is of some "probable value" to the correctness of the result. *Mathews, supra.* The burden on the state is not a substantial one, at least not in the present case, where it appears the respondent was incarcerated in the county jail.

We hold that, due to the great deference ac-

[1] We allude to the *Mathews* analysis only as one framework for consideration of the due process question under both Michigan and federal law, not as the basis for our decision. *Mathews* provides a helpful tool for analysis of such issues. *Lassiter, supra,* 452 US 26-32; *In re Juvenile Appeal,* 187 Conn 431 446 A2d 808 (1982). Nevertheless, our decision is neither based solely on *Mathews* nor solely upon our conception of what the Fourteenth Amendment dictates, but on the Michigan due process clause as well. Const 1963, art 1, § 17. See, *Michigan v Long,* 363 US 1032; 103 S Ct 3469; 77 L Ed 2d 1201, 1214-1216 (1983).

corded parental rights under Michigan law, the probate court erred in this case by proceeding with the dispositional hearing. The court should have made an effort to bring respondent to the courtroom. We cannot agree with petitioner's waiver argument. There was no waiver. Counsel stated he had not spoken with his client for quite some time. Nor do we believe that respondent waived her right to be present by failing to contact her attorney. Respondent was in jail at the time. She may have thought that she would be brought to the probate court without a special request. Whatever the explanation, reception of a notice of hearing followed by silence is not enough to show a voluntary waiver, when the respondent is in the custody of the state.

What is the proper remedy? The procedural fairness signified by the phrase "due process" allows a great measure of flexibility in fashioning an appropriate remedy. We believe that a completely new dispositional hearing would be excessive, given the nature of the constitutional violation. Rather, on remand, the probate court must arrange for respondent's presence and give her an opportunity to present evidence concerning her fitness and efforts, if any, to provide a fit home for the child. *Cf., In the Matter of Taurus F,* 415 Mich 512; 330 NW2d 33 (1982).[2] The probate court shall then make new findings of fact and state its conclusions, as provided in MCR 1985, 5.914.

[2] The probate court relied in part on MCL 712A.19a(d); MSA 27.3178(598.19a)(d), which allows for termination of parental rights "if the parent or guardian is imprisoned for such a period that the child will be deprived of a normal home for a period of more than 2 years". However, the petition was based on MCL 712A.19a(c); MSA 27.3178(598.19a)(c), *i.e.,* respondent's long record of mental illness and consequent unfitness for parenthood. It is not clear from its opinion whether the probate court would have terminated respondent's rights based solely on her imprisonment. We leave that issue for disposition on remand.

Remanded for further proceedings consistent with this opinion.