OPINION OF THE COURT
Richard N. Ross, J.
In these proceedings filed pursuant to Social Services Law § 384-b, petitioners New York Foundling Hospital (subject child A. O.) and Pious XII Youth and Family Services (subject *178 children C. G. O. and A. C.) seek an order permitting the fact-finding hearing to occur without the personal appearance of the respondent putative father, who is incarcerated in Connecticut. State of Connecticut corrections officials are refusing to produce the respondent putative father in New York for the hearing. Unless he is paroled, he is expected to be incarcerated until July 1996. The earliest date that the respondent can apply for parole is September 1993; some period of time thereafter would be required for consideration of his application and his release if his application were granted. Even in the circumstance of the respondent’s release, Connecticut parole provisions could operate to continue to prevent his appearance in New York.
The proceedings involving the children C. G. O. and A. C. were filed on November 15, 1991 and had their initial appearance in Bronx Family Court on January 13, 1992. The proceeding involving the child A. O. was filed on March 30, 1992 and had its initial Bronx Family Court appearance on May 4, 1992.[1] An order to produce the respondent putative father was issued by this court on March 9, 1992 for a June 9, 1992 hearing in the cases involving C. G. O. and A. C. The State of Connecticut did not produce the respondent for that hearing. On September 14, 1992, this court issued another order to produce the respondent putative father, this time for a hearing scheduled for October 26, 1992 involving all three subject children. The Enfield Correctional Facility of Enfield, Connecticut, by letter to this court dated September 23, 1992, indicated it would not produce the respondent for that hearing; in fact, he was not produced. The court has issued an order to produce the respondent for fact finding on February 2, 1993, and Connecticut officials have indicated that they will not produce the respondent on that date.[2]
Through his New York appointed counsel, the respondent *179 has made known his desire to attend the fact finding. The children’s Law Guardian supports the petitioners’ application.[3]
The State, acting as parens patriae, and the children who are the subject of this proceeding, have "legitimate concern[s] for [the] prompt and certain” resolution of this case. (Matter of Robert O. v Russell K., 80 NY2d 254, 264 [1992]; see, Lassiter v Department of Social Servs., 452 US 18, 27-28 [1981]; Matter of Kendra M., 175 AD2d 657, 658 [4th Dept 1991].) Child foster care is intended as a temporary solution for meeting a child’s needs. (Matter of Michael B., 80 NY2d 299, 308-310 [1992].) The law does not intend that children placed in foster care should be allowed to remain or languish in that status without being adopted or returned to their biological parents or other legal custodians. (Social Services Law § 384-b [1] [b]; Matter of Robert O. v Russell K, supra, at 269 [Titone, J., concurring]; Matter of Yem, 54 AD2d 673, 674 [1st Dept 1976].)
Respondent putative father asserts his interest in personally confronting witnesses that may testify in support of petitioners’ case and in having the court observe his demeanor and assess his credibility in person if he chooses to testify. In this civil case, these interests, while significant — and especially so when a respondent’s parental rights are at issue — are nevertheless not guaranteed absolutely of protection. (Department of Social Servs. v Phillip C., NYJL, Nov. 18, 1991, at 33, col 4 [3d Dept]; Matter of Raymond Dean L., 109 AD2d 87, 88-89 [4th Dept 1985]; Matter of Donna K., 132 AD2d 1004 [4th Dept 1987]; see also, Matter of Nicole V., 71 NY2d 112 [1987]; Matter of Cecilia R., 36 NY2d 317, 322 [1975]; Southern Indus, v Esskay Fabrics, 81 AD2d 647 [2d Dept 1981].) The interests of respondents in proceedings filed pursuant to Social Services Law § 384-b, as with respondents in child protective proceedings filed pursuant to Family Court Act article 10, must be balanced against competing State interests as parens patriae and the interests of children. (Lassiter v Department of Social Servs., supra, at 27-28, citing Mathews v Eldridge, 424 US 319, 335 [1976]; Matter of Kendra M., supra, at 658; Matter of Laticia B., 156 AD2d 681, 682 [2d Dept 1989]; Matter of Donna K., supra; see also, Matter of Robert O. v Russell K., supra, at *180 268-269 [Titone, J., concurring].) Moreover, the issue of whether a respondent’s interests require protection must be analyzed and decided according to the facts and circumstances of each case. (Lassiter v Department of Social Servs., supra, at 24-25; Matter of Cecilia R., supra, at 322; Matter of Raymond Dean L., supra, at 90.)
In the instant case, the need of the State and the children for a prompt and certain resolution of the children’s status, in order to promote the earliest possible start towards a stable future for the children, is a vital countervailing interest to the interests asserted by the respondent putative father. (Matter of Robert O. v Russell K., supra, at 264, 269.) In Matter of Raymond Dean L. (109 AD2d 87, supra [4th Dept 1985]), a proceeding filed pursuant to Social Services Law § 384-b (4) (d) in which the respondent was unable to attend hearings because of a physical disability, the appellate court found that an appropriate balance between the rights of the State, the child, and the parent would be reached by permitting oral deposition of the respondent coupled with in-court representation of the respondent by counsel. The Court said: "Balancing these elements, we determine that children’s right to a prompt determination of their status is just as important as the interest of the father, and that an indefinite delay of the children’s right is a more egregious deprivation than the father’s loss of his right to be present at the hearing. This right of the father is only one part of his due process rights in these proceedings, and its loss will not necessarily deprive him of a fair hearing. The risk that his absence will lead to an erroneous decision can be reduced or eliminated by permitting him to give testimony by deposition, if possible, and by his representation at trial by his attorney. The loss by the children of their day in court will, on the other hand, deprive them completely of their right to a judicial determination of their status.” (Matter of Raymond Dean L., supra, at 90-91.)[4]
The instant case is unlike Matter of Kendra M. (supra), in *181 which the appellate court reversed a finding of permanent neglect against an incarcerated respondent where the respondent did not appear personally at the fact finding and no effort to order production of the respondent was made. The respondent was incarcerated in a New York facility; an order to produce would, presumably, have assured the respondent’s presence. The court held that a determination of "unusual and justifiable circumstances” justifying the nonappearance of the respondent should have preceded the court’s conducting the fact finding. (Matter of Kendra M., supra, citing Matter of Laticia B., supra, at 682; Matter of Ana Maria Q., 52 AD2d 607 [2d Dept 1976]; Matter of Cecilia R., supra.)
The "unusual and justifiable circumstances” in this case for proceeding to fact finding in the absence of the respondent putative father are his unavailability until July 1996 due to his incarceration and the unwillingness of the State of Connecticut to produce him for the New York hearing. An earlier release of the respondent to parole, as well as the possibility that he would be able subsequent to that release to appear in New York in this proceeding, are entirely speculative at present. The children will be ages nine, eight and seven in July 1996. By then, two of the children will have been in foster care for eight years, the third for nearly seven years. In this court’s opinion, the interest of the State and the children in such a circumstance in promoting the children’s well-being —by determining their status at this point in time — outweighs the respondent’s interest in being present at fact finding. (See, Matter of Robert O. v Russell K., supra, at 269; Matter of Raymond Dean L., supra, at 90.)
In view of the foregoing, the fact finding scheduled for February 2, 1993 will proceed even if Connecticut officials do not produce the respondent in New York on that date. The court notes that the petitioners suggested several alternative methods for out-of-court participation by the respondent to the court and the respondent at oral argument on petitioners’ application on December 4, 1992. These alternatives include the respondent’s participation via telephone conference call or by written sworn testimony, among other methods. On Decem *182 ber 4, 1992 and on subsequent oral argument on December 14, 1992, respondent’s counsel indicated no interest in any of the proposed alternatives, asserting the respondent’s interest in appearing personally at fact finding. A conference between the court and all counsel in this matter will be held on January 21, 1993 at 9:30 a.m., at which time a specific method of conducting the fact finding with the respondent putative father in Connecticut will be discussed in detail.[5]

. Counsel for the respondent putative father filed a notice of appearance in the proceedings involving C. G. O. and A. C. on June 9, 1992 and in the proceeding involving A. 0. on June 15, 1992. She subsequently appeared in this court on behalf of the respondent and participated in related discussions and argument on four dates in 1992: September 14, October 26, December 4 and December 14.

. The respondent cannot be produced through the Interstate Compact on Detainers (CPL 580.10 et seq.), the Interstate Corrections Compact (Correction Law § 100 et seq.), or the Uniform Criminal Extradition Act (CPL 570.02 et seq.).

. The parental rights of the respondent mother were previously terminated with respect to the child C. G. O. Personal service on the respondent mother was accomplished in January 1992 and April 1992 with respect to the proceedings involving A. O. and A. C.; the mother has never appeared in these two proceedings.

. For courts outside New York in support of this view, see, In re L. V. (240 Neb 404, 482 NW2d 250 [1992]); E.J.S. v State (754 P2d 749 [Sup Ct, Alaska 1988]); In re Randy Scott B. (511 A2d 450 [Sup Jud Ct, Me 1986]); In re Juvenile Appeal (187 Conn 431, 446 A2d 808 [1982]); Matter of Welfare of HGB (306 NW2d 821 [Sup Ct, Minn 1981]); In re F.H. (283 NW2d 202 [Sup Ct, ND 1979]); Matter of Rich v Lang (604 P2d 1248 [Sup Ct, Okla 1979]); Matter of Quevedo (106 NC App 574, 419 SE2d 158, appeal dismissed 332 NC 483, 424 SE2d 397 [1992]); In re J.S. (470 NW2d 48 [Ct App, Iowa 1991]); In re Rikki D. (227 Cal App 3d 1624, 278 Cal Rptr 565 [1991]); In re J.L.D. (14 Kan App 2d 487, 794 P2d 319 [1990]); People ex rel. V.M.R. (768 P2d 1268 *181 [Ct App, Colo 1989]); Michigan Dept. of Social Servs. v Render (145 Mich App 344, 377 NW2d 421 [1985]); Matter of Darrow (32 Wash App 803, 649 P2d 858 [1982]); In re Gary U. v G.E.U. (136 Cal App 3d 494, 186 Cal Rptr 316 [1982]); but see, In re Jonathan P. (23 Conn App 207, 579 A2d 587 [1990]).

. Made part of the record for the purpose of this decision are three letters — dated September 23, 1992, September 27, 1992, and December 17, 1992 — from the Connecticut Department of Corrections to the court and orders to produce the respondent issued by the court in 1992, including the December 14, 1992 order to produce the respondent for fact finding on February 2, 1993.