*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* VINSON, Minor.

UNPUBLISHED
April 13, 2026
11:28 AM

No. 376042
Wayne Circuit Court
Family Division
LC No. 2018-000286-NA

Before: KOROBKIN, P.J., and YOUNG and BAZZI, JJ.

PER CURIAM.

Respondent[1] appeals as of right the order terminating her parental rights to her minor child TV under MCL 712A.19b(3)(i), (j), and (k)(*i*). On appeal, respondent argues that her due process rights were violated when the trial court held her termination of parental rights proceeding in her absence. We vacate the termination order and remand for the reasons stated in this opinion.

## I. BACKGROUND AND FACTS

In March 2024, the Department of Health and Human Services (DHHS) petitioned to terminate respondent's parental rights to TV after respondent was arrested for multiple outstanding warrants and for operating a stolen vehicle. Respondent had been operating the stolen vehicle with TV not properly secured therein and a firearm placed in the seat next to TV. The trial court authorized the petition and placed TV with DHHS, noting that reasonable efforts to prevent removal from respondent's care were not required because respondent's parental rights to three of her other children had been terminated years earlier. TV was thereafter placed with foster parents.

At later pretrial hearings, TV's foster care worker expressed concern that respondent had mentioned that she had money stashed away and wanted TV to be removed from her foster family,

---

[1] The parental rights of TV's putative fathers were also terminated during the lower court proceedings. Because neither putative father is a party to this appeal, we refer to TV's mother only as respondent.

and that respondent had gotten into an argument with TV's foster parents over Zoom. TV's foster care worker also testified that respondent had threatened her and other foster care workers and had threatened to kidnap TV.

On January 1, 2025, a shooting occurred in the foster home where TV was residing. TV's foster mother and her foster mother's father were fatally shot, and her foster father suffered nonfatal gunshot injuries. TV was abducted from the home but eventually recovered. On January 3, 2025, respondent was charged with open murder, first-degree home invasion, and kidnapping, among other offenses. That criminal proceeding remains ongoing. On January 10, 2025, DHHS amended its petition to terminate respondent's parental rights to TV, adding an allegation that respondent had entered the foster placement with two men, killed TV's foster mother and her father, and shot TV's foster father.

Respondent's termination hearing commenced on April 3, 2025. Respondent appeared virtually, i.e., by video conference, from the Washtenaw County Jail. When the trial court transitioned to the portion of the hearing focused on her parental rights, respondent stated that she was "not feeling good right now." Following a two-hour recess, respondent again stated that she was feeling sick. Respondent's counsel asked the trial court to adjourn the termination hearing until the following Monday, April 7, 2025. The trial court found "good cause to continue these proceedings for the next trial date, which is April 7th." The trial court stated that unless it had "some documentation from a licensed medical provider indicating that the respondent is unable to be present for these proceedings for the trial on Monday, then we will be going forward with the trial on Monday."

On April 3, 2025, the trial court issued a petition for writ of habeas corpus and subpoena for respondent to appear in person on April 7, 2025. The Wayne County Sheriff's Office informed the court on April 4, 2025 that it was unable to accommodate the request for respondent to appear in person "[d]ue to short notice."[2] The trial court also had separately ordered respondent to be brought to a video area in the jail to participate in the April 7, 2025 hearing via video conference. Further, a note was marked on the ready-for-trial document for the April 7, 2025 document stating, "not enough time video already scheduled."

The termination hearing resumed on April 7, 2025 about an hour and a half later than scheduled. Respondent was not present via video conference or in person, and the court noted that it "had an opportunity to have some in chamber communications with all attorneys at the table and . . . we were trying to workout to see why [respondent] wasn't presented." The court stated that after respondent failed to appear for the proceedings despite the court clerk's "present[ation of] a writ so that [respondent] would be brought forward to physically be present for the[] proceedings," it "was in communication with the jail to determine where mother was and why she was not being presented forward. It's my understanding that the reason she is not here today is her refusal to be present." The court then asked the parties whether they agreed that this was "an accurate recitation" of the events that morning. Respondent's counsel affirmed, but soon after

---

[2] This request was seemingly for the Wayne County Sheriff's Office to coordinate with the Washtenaw County Jail to ensure respondent's presence at the trial court, Wayne Circuit Court.

stated that she understood respondent to not be present because respondent was not feeling well, and then moments later requested an adjournment because she was unaware of "the extent of [respondent's illness] or if it's just a refusal to come or if [respondent is] just too ill."

The trial court proceeded to explain that it had been "very firm in that unless [it] got some sort of medical documentation," it would "proceed forward" and that "[t]he representation that [it] had received from thus far is that [respondent is] refusing to be present." The court described how respondent's counsel had attempted to reach respondent and to "figure out what is going on, why [respondent is] not here, the whole nine and has been unsuccessful notwithstanding, she was properly notified of today's proceedings. Certainly given an opportunity to be present." The court continued, stating that it was "going to take [respondent's] failure to appear as a refusal to appear and be present for these proceedings" and that it would therefore not adjourn the trial any further. The court concluded by stating that TV "deserves some sort of permanency" and "[s]o we certainly cannot continue with whatever is going on behind the scenes."

After hearing testimony from the Children's Protective Services investigator assigned to the case, the trial court found grounds for jurisdiction under MCL 712A.2(b)(1) and (2) and determined that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(i), (j), and (k)(*i*). And after hearing the testimony of TV's foster care worker, the trial court found that it was in TV's best interests to terminate respondent's parental rights. Accordingly, the trial court ordered that respondent's parental rights to TV be terminated.

> Following the trial, the court issued an order of adjudication which stated in pertinent part: The parties appeared for the bench trial in-person except Respondent Mother, who refused to appear. During the 04/03/2025 bench trial, this Court advised on the Record, the requirements for [respondent's] failure to appear to be excused. The Court at all times provided [respondent's counsel] the opportunity to communicate with her client while she was present Via Zoom at the Washtenaw County Jail on 04/03/2025. A Writ of Habeas Corpus was entered on 04/03/2025, for the 04/07/2025 bench trial and [respondent] was not brought forward in-person. The 04/07/2025 Order Adjourning Bench Trial[] memorialized [respondent's] requirements for medical documentation and further stated that failure to present said documentation will result in the bench trial proceeding in her absence. This Court therefore finds that [respondent's] failure to appear was voluntary and was a refusal to appear and participate in the proceedings after receiving proper Notice and an opportunity to appear.

> Respondent now appeals.

## II. STANDARDS OF REVIEW

We "review[] a ruling on a motion for a continuance for an abuse of discretion." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *Id*. at 15 (quotation marks and citation omitted).

We review a trial court's factual findings for clear error. MCR 2.613(C); MCR 3.902(A) (stating that MCR 2.613 applies in child protective proceedings). "A finding is clearly erroneous if, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made." *In re AGD*, 327 Mich App 332, 338; 933 NW2d 751 (2019) (quotation marks and citation omitted).

And we review de novo "[w]hether a child protective proceeding complied with a person's right to due process," *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009), and the interpretation of the court rules, *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006).

## III. ANALYSIS

Respondent argues the trial court violated her due process rights by proceeding with the termination hearing in her absence. Because the record is insufficiently developed as to why respondent was absent, we cannot undertake an informed analysis of this issue and therefore vacate the trial court's termination order and remand for further proceedings.

We "function[] as a court of review that is principally charged with the duty of correcting errors that occurred below." *Burns v City of Detroit (On Remand)*, 253 Mich App 608, 615; 660 NW2d 85 (2002) (quotation marks and citation omitted). Our review is therefore "limited to the record established by the trial court." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002).

In deciding to proceed with respondent's termination hearing in her absence, the trial court concluded that respondent's failure to appear was voluntary. The court inconsistently articulated the basis for this finding, however. The trial court first explained how, because respondent was not present at the hearing, it "was in communication with the jail to determine where [respondent] was and why she was not being presented forward." Notably, this alleged communication seems to have been conducted without the presence of a court reporter, and there is no record evidence about its content, with whom from the jail it was made, and the basis for the jail's understanding. The court then stated: "It's my understanding that the reason she is not here today is her refusal to be present." The court later again reiterated this understanding, stating that "[t]he representation that [it] had received from thus far is that she's refusing to be present."

At other times during the hearing, however, the court indicated that it had concluded that respondent's absence was voluntarily solely because the court had warned at the prior hearing that it would proceed forward unless medical documentation of respondent's illness was provided. The court's order of adjudication issued after the trial used this same rationale, stating that it had clarified that respondent's failure to present medical documentation "will result in the bench trial proceeding in her absence. This Court therefore finds that [respondent's] failure to appear was voluntary and was a refusal to appear and particulate in the proceedings . . . ."

Unfortunately, the lack of record evidence as to the reason for respondent's absence leaves us unable to resolve the trial court's inconsistent explanations for finding that respondent was refusing to appear, and accordingly, whether the trial court clearly erred in so finding. This incomplete record leaves us consequently unable to make an informed determination of whether the trial court's proceeding in respondent's absence constituted a due process violation. Finding

-4-

"the record in this matter . . . too incomplete to facilitate meaningful appellate review," *Jordan v Dep't of Health & Human Servs*, 510 Mich 369, 376; 987 NW2d 119 (2022), we remand for further fact-finding by the trial court as to the reason for respondent's absence from the termination hearing on April 7, 2025 with the direction that the trial court make this determination using record evidence sufficient to facilitate meaningful appellate review. See *id.* at 379; *People v Armstrong*, 175 Mich App 181, 184; 437 NW2d 343 (1989) ("Generally, where the factual findings are insufficient, the appropriate remedy is to remand the cause for additional fact-finding."). We also direct the trial court to decide whether it properly proceeded by holding respondent's termination proceeding without her given its determination of the reason for respondent's absence.

Without constraining the trial court or the parties as the factual record is developed, we offer the following commentary as to the due process implications of possible facts that may be ultimately supported by the record.[3]

Respondent submits that she was denied due process when the trial court proceeded with the termination hearing in her absence. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v Eldridge*, 424 US 319, 332; 96 S Ct 893; 47 L Ed 2d 18 (1976). "Due process is flexible," *id.* at 334 (cleaned up), and ultimately "requires fundamental fairness, which is determined in a particular situation first by 'considering any relevant precedents and then by assessing the several interests that are at stake,' " *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993) (citation omitted).

Specific to the termination of respondent's parental rights at issue here, "[p]arents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003). Therefore, "[w]hen the State moves to destroy . . . familial bonds, it must provide the parents with fundamentally fair procedures." *Santosky v Kramer*, 455 US 745, 753-754; 102 S Ct 1388; 71 L Ed 2d 599 (1982). Indeed, "due process requirements 'are much greater' in termination cases than in ordinary civil actions.' " *In re Vasquez*, 199 Mich App 44, 46; 501 NW2d 231 (1993) (quotation marks and citation omitted).

An incarcerated parent does not have an "absolute right to be present at the dispositional hearing of a proceeding to terminate parental rights" and thus trial courts are not necessarily required by due process to secure an incarcerated parent's presence at a termination hearing. *Id.* at 48, 50. Rather, this Court's decision in *Vasquez* compels the application of the familiar three-

---

[3] We also note, to the extent it aids the parties and the court on remand, that MCR 2.004(F), which prohibits a court from "grant[ing] the relief requested by the moving party concerning the minor child if the incarcerated party has not been offered the opportunity to participate in the proceedings, as described in this rule," applies only to parties who are "incarcerated under the jurisdiction of the Department of Corrections." MCR 2.004(A)(2). See also *In re BAD*, 264 Mich App 66, 74-75; 690 NW2d 287 (2004). Because respondent was in the Washtenaw County Jail, she was not under the jurisdiction of the Michigan Department of Corrections at the time of the April 7, 2025 hearing. MCR 2.004(F) therefore does not apply.

factor balancing test set forth in the United States Supreme Court's decision in *Mathews* to determine whether, under the circumstances of a particular case, procedural due process requires a trial court to secure an incarcerated parent's presence at a termination hearing. *Id.* at 50; see also *In re Render*, 145 Mich App 344, 349-350; 377 NW2d 421 (1985) (applying the *Mathews* balancing test in determining that the trial court "should have made an effort to bring respondent to the courtroom"). Under this test, courts balance: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and" (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 US at 335.

In the present case, under the first prong of the balancing test, the private interest weighs heavily. See *id.* For in addition to TV's interest in "her own proper care and custody," respondent's "fundamental liberty interest in the care and custody of . . . her child" was at stake. *In re HRC*, 286 Mich App 444, 455; 781 NW2d 105 (2009). Indeed, the termination proceeding risked not simply infringing on respondent's fundamental liberty interest, but the eradication thereof. See *Santosky*, 455 US at 759. Respondent's interest "in the accuracy and justice of the decision to terminate . . . her parental status is, therefore, a commanding one." *Id.* (quotation marks and citation omitted).

The second prong requires consideration of the "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 US at 335. In *In re Render*, this Court held that the risk of an erroneous deprivation increased in the incarcerated parent's absence, finding that although the respondent "had an attorney at the dispositional hearing, it [wa]s impossible to determine whether she could have provided the attorney with information helpful to her defense." *In re Render*, 145 Mich App at 349. We additionally noted that "in many parental rights termination hearings, the presence of the very person whose rights the state aims to take away is of some 'probable value' to the correctness of the result." *Id.* We determined in *In re Vasquez*, however, that the incarcerated parent's absence did not increase the risk of erroneous deprivation because the "respondent was well represented by his counsel at the termination hearing," convincing us "that [the] respondent's presence at the side of his counsel would have changed nothing." *In re Vasquez*, 199 Mich App at 48.

Here, the trial court certainly made some efforts to enable respondent to attend the continuation of her termination hearing, issuing a petition for writ of habeas corpus and subpoena on April 3, 2025 for respondent to appear in person on April 7, 2025 and a separate order for respondent to be brought to a video area to participate in the April 7, 2025 hearing via video conference. In addition, respondent states in her brief on appeal that "[t]he Zoom room had . . . been set up." And the court stated that it had been in communication with the jail to determine why the respondent was not present, leading to its "understanding that the reason she [wa]s not [t]here . . . [wa]s her refusal to be present." If, on remand, the trial court finds that respondent was voluntarily refusing to attend her termination hearing on the basis of record evidence demonstrating the jail's communication of that information, the procedures used by the trial court appear tailored to significantly decrease the erroneous deprivation of respondent's private interest. For if respondent had voluntarily refused to attend her termination hearing, she affirmatively

-6-

rejected the opportunity to provide the " 'probable value' to the correctness of the result" that her presence would have otherwise provided. *In re Render*, 145 Mich App at 349. Thus, as in *In re Vasquez*, attaining respondent's presence at the termination hearing despite her outright refusal to attend indicates "that respondent's presence at the side of h[er] counsel would have changed nothing." *In re Vasquez*, 199 Mich App at 48.

If the trial court concluded that respondent was refusing to attend simply because respondent was not present and had not provided the court the medical evidence it requested, however, the risk of an erroneous deprivation of respondent's private interest appears much greater. Respondent's incarcerated status likely hindered her ability to attain the requested documentation from a medical provider and subsequently furnish this to the trial court over a four-day period that included that weekend. And if respondent had been willing but unable to attend due to legitimate illness, further delaying the termination hearing would have likely decreased the risk of an erroneous deprivation of her liberty interest. Cf. *In re Utrera*, 281 Mich App at 12 (concluding that the trial court had adjourned respondent's termination hearing for good cause when respondent was hospitalized). For respondent's counsel indicated that she had intended to call respondent to testify during the continuation of the termination hearing, and respondent had earlier spoken during the April 3, 2025 hearing. Respondent thus appeared able to "provide[] [her] attorney with information helpful to her defense," and without her testimony, there is greater risk that the trial court reached the incorrect result, erroneously depriving respondent of her fundamental interest. See *In re Render*, 145 Mich App at 349.

The third and final factor to be balanced is "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 US at 335. "[T]he state has a legitimate and important interest in protecting the health and safety of minors" which is undermined "when a father or mother is erroneously deprived of his or her fundamental right to parent a child." *In re Sanders*, 495 Mich 394, 415-416; 852 NW2d 524 (2014). In *In re Render*, we concluded that the state did not face a substantial burden in attempting to bring the respondent to attend her termination hearing because the respondent was incarcerated in a county jail in Michigan. *In re Render*, 145 Mich App at 349. But because the respondent in *In re Vasquez* was incarcerated in Texas, we recognized that the "the financial and administrative burden on the state in order to bring respondent . . . to attend the hearing would have been far greater than in *Render*." *In re Vasquez*, 199 Mich App at 48. We also noted that "[i]n light of present-day telecommunications, other means that fall short of securing the physical presence of a parent are available to ensure that an incarcerated prisoner receives due process at a dispositional hearing." *Id.* at 48-49. Those options may indeed be more cost- and administratively effective for the state.

Because respondent here "was incarcerated in the county jail," *In re Render*, 145 Mich App at 349, and "present-day telecommunications," like the videoconferencing technology at the Washtenaw County Jail evidenced by respondent's remote appearance at the April 3, 2025 termination hearing, were "available to ensure that" respondent "receive[d] due process," see *In re Vasquez*, 199 Mich App at 48-49, the state would not have been substantially burdened by undertaking additional efforts to attain respondent's presence. Nor is it likely that a second adjournment to accommodate respondent's illness and recovery time would impose fiscal or administrative burdens substantial enough to overcome respondent's interest in being present. See *In re Utrera*, 281 Mich App at 12. Of course, if respondent was voluntarily refusing the

opportunity to attend the termination hearing and thus her presence "would have changed nothing," *id.* at 48, we see no need for the state to have borne the additional, even if insubstantial, burden of undertaking additional efforts to ensure respondent's presence. If, however, the trial court concluded that respondent was refusing to attend only because she was not present and had not provided the requested medical documentation but four days after the continuance was granted, the burden borne by the state in providing additional procedural safeguards to attain respondent's presence seems minimal in comparison to the increased risk of erroneous deprivation of her compelling private interest that respondent's absence entailed and of the state's important interest in protecting TV's welfare.

We reiterate "that the record in this matter is too incomplete to facilitate meaningful appellate review," *Jordan*, 510 Mich at 376, and that "due process is flexible," *Mathews*, 424 US at 334 (cleaned up). As such, the fact-finding that we direct on remand may result in the need for the trial court to re-conduct respondent's termination hearing to satisfy due process requirements. But, again, the development of the record in the trial court may ultimately leave the trial court satisfied that respondent's due process rights were not violated by its proceeding in her absence on April 7, 2025. If that is the case, the trial court need not conduct another hearing on the termination of respondent's parental rights at that juncture.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Adrienne N. Young
/s/ Mariam S. Bazzi